Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-trial Agreement as
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between plaintiff and defendant Roadway Express, Inc.
3. Plaintiff's average weekly wage at the time of the accident was $1,014.12, which yields the maximum rate of compensation for 1998 of $532.00.
4. The issues for hearing are:
 (a). Whether plaintiff sustained a compensable injury by accident or specific traumatic incident on or about October 3, 1998?
(b). If so, to what benefits is he entitled?
 (c). Plaintiff has also raised an issue as to a change of condition related to the prior claim in IC No. 909375.
 (d). Defendant contends that plaintiff's claim for any change of condition is barred by N.C. Gen. Stat. § 97-47.
5. Exhibits attached to the Pre-trial Agreement were received as Stipulated Exhibits 1 through 5: (1) IC Form 28B; (2) Employee's Notice of Injury or Recurrence dated 6/29/89; (3) Employee's Notice of Injury or Recurrence dated 7/7/92; (4) Employee's Notice of Injury or Recurrence dated 10/13/98; (5) Transcript of recorded statement of plaintiff dated 11/3/98.
6. Subsequent to the hearing before the Deputy Commissioner, the parties submitted additional medical records per Mr. Byrum's letters of December 21, 1999 and January 1, 2000.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, plaintiff was 56 years of age. He worked as a truck driver for defendant-employer for over 12 years.
2. As part of his duties as a truck driver, plaintiff connected and disconnected trailers to tractors. The equipment that connects the trailer and tractor is called a Jifflox.
3. Plaintiff sustained a compensable injury to his back on June 4, 1989, when he attempted to position a Jifflox. This injury was the subject of Stipulated Exhibits 1 and 2. Plaintiff underwent back surgery in September 1990, performed by Dr. Ernesto Botero. On April 15, 1991, Dr. Botero rated plaintiff with a twenty percent permanent impairment to his back pursuant to Industrial Commission guidelines.
4. Following his back surgery, plaintiff continued to have back pain. However, he returned to work as a truck driver and worked continuously from 1993 to 1998.
5. On July 1, 1992, plaintiff sustained an aggravation of his 1989 back injury through another injury at work. This second injury was the subject of Stipulated Exhibit 3. This matter was resolved without a hearing.
6. On August 8, 1998, plaintiff was involved in a vehicular accident. The clutch on his tractor malfunctioned and plaintiff had to park the truck on the side of the road. It was raining at the time. While plaintiff waited in the tractor for defendant-employer to send a wrecker, another driver lost control of his vehicle and hit the side of plaintiff's tractor. Plaintiff did not miss any work due to this accident and did not file a claim for any injury arising from it.
7. The injury which is the subject of this claim arose on October 3, 1998. On that date, plaintiff dropped off trailer loads in Sanford, North Carolina. He was instructed by defendant-employer to convert the tractor to pull a 48-foot trailer. When plaintiff attempted to back the tractor up to connect with the trailer, he encountered difficulty. The Jifflox would not engage, in part because a guide for the unit was bent. Plaintiff attempted three times to connect the units. He had to use his hands to manually connect the units, which involved significant pushing and pulling.
8. While attempting to align and connect the Jifflox, plaintiff felt a pull and pain in his back, similar to the pain he experienced in his original injury sustained in June 1989. When he got home around 3 or 4 a.m., plaintiff could not sleep due to his back pain. He told his wife he was in pain. The next day, plaintiff went to see his family doctor at Guilford Family Practice.
9. On October 4, 1998, plaintiff called in sick to work. He mentioned that he was passing blood. When plaintiff first saw his family doctor, due to the back pain and blood, the doctor suspected a kidney infection. However, a kidney infection was ruled out and plaintiff was referred to specialists for further evaluation.
10. Plaintiff was seen by Dr. Peter Dalldorf, an orthopedic specialist, on October 7, 1998. Dr. Dalldorf previously performed arthroscopic surgery on plaintiff's shoulder in June 1998. At the October visit plaintiff complained of lower back pain radiating into his hip. Dr. Dalldorf made an initial assessment of a lumbosacral strain without a recurrent disc herniation. He referred plaintiff for physical therapy.
11. On October 8, 1998, plaintiff saw Dr. Botero, the neurosurgeon who performed the prior back surgery in 1990. Plaintiff was miserable with pain in his back, radiating into his hip. Dr. Botero ordered an MRI, and prescribed medication and steroid injections.
12. When conservative treatment did not give needed relief, Dr. Botero ordered a lumbar myelogram, which confirmed a recurrent disc herniation at L5-S1. On December 29, 1998, Dr. Botero performed a discectomy to remove the disc fragments.
13. Although their notes do not reflect that plaintiff specifically discussed the October 3, 1998 Jifflox incident with either Dr. Botero or Dr. Dalldorf when he first saw them, when asked about the incident plaintiff has described, both physicians stated that the incident would likely cause the recurrent herniated disc.
14. On or about October 13, 1998, plaintiff's wife completed the Employee's Notice of Injury or Recurrence and faxed it to the employer the next day. Plaintiff's wife was not specifically aware of the details of the Jifflox incident that brought on the more severe pain and therefore she did not include this information on the injury reporting form. Plaintiff had ongoing back pain following his prior surgery, so the fact that his wife reported pain for a month is not inconsistent.
15. Plaintiff's recorded statement was taken on November 3, 1998 by Missy Guillot with Gallagher Bassett. As part of that statement, plaintiff specifically mentioned working with the Jifflox on October 3, 1998 and that he felt a pull in his back.
16. Based upon his demeanor at the hearing before the Deputy Commissioner, and considering the evidence that Dr. Dalldorf found plaintiff to be a very honest and earnest individual, the Deputy Commissioner found plaintiff's testimony as to how he injured his back to be credible. The Full Commission declines to reverse the Deputy Commissioner's credibility determination.
17. Although plaintiff had ongoing back pain after the compensable injury in 1989, the difficulty with the Jifflox on October 3, 1998 was a specific traumatic incident, which caused the re-injury and herniation of plaintiff's lumbar disc at L5-S1.
18. Following the surgery, Dr. Botero continued to see plaintiff in follow-up. In February 1999, he referred plaintiff for physical therapy. As of his April 15, 1999 visit, Dr. Botero had not released plaintiff to return to work, but anticipated he would make a decision on the return to work when plaintiff completed his therapy.
19. Plaintiff was discharged from the physical therapy program on May 5, 1999. Plaintiff returned to work with defendant-employer as a driver in May 1999 but has been unable to drive as long or as frequently as before the accident.
20. As of August 16, 1999, plaintiff reached maximum medical improvement with an additional twenty percent permanent disability to his back as a result of the October 3, 1998 compensable injury. Dr. Botero noted at that time that driving would aggravate plaintiff's back condition.
21. As a result of his work-related back injury of October 3, 1998, plaintiff was unable to earn wages in the same or any other employment from October 4, 1998 through May 1, 1999.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. On or about October 3, 1998, plaintiff sustained an injury by accident or specific traumatic incident arising out of and in the course of his employment with defendant-employer, resulting in injury to his back, a reherniation of the L5-S1 disc. This incident was a new injury by accident and not a change of condition. N.C. Gen. Stat. §§ 97-2(6);97-47.
2. As a result of his injury by accident, plaintiff was temporarily totally disabled and is entitled to compensation at the rate of $532.00 per week from October 4, 1998 through May 1, 1999. N.C. Gen. Stat. §97-29.
3. Following his injury by accident, plaintiff reached maximum medical improvement as of August 16, 1999. As a result of his injury by accident, plaintiff sustained a twenty percent permanent functional impairment to his back for which he is entitled to benefits pursuant to N.C. Gen. Stat. § 97-31(23).
4. Due to his back injury, plaintiff has incurred expenses for medical treatment, which was reasonably necessary, including the surgery performed by Dr. Botero in December 1998. Defendant is responsible for payment of all such reasonably necessary medical expenses. N.C. Gen. Stat. §§ 97-2(19), 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendant shall pay plaintiff compensation at the rate of $532.00 per week from October 4, 1998 through May 1, 1999 as temporary total disability compensation. Such compensation has accrued and therefore shall be paid in a lump sum, subject to attorney's fees.
2. Defendant shall pay plaintiff compensation at the rate of $532.00 per week for 60 weeks beginning August 16, 1999 for the twenty percent permanent functional impairment to his back. Such compensation has accrued and therefore shall be paid in a lump sum, subject to attorney's fees.
3. Defendant shall pay all expenses incurred by plaintiff for reasonably necessary medical treatment for the back injury he sustained on October 3, 1998.
4. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff herein is approved for plaintiff's counsel. Twenty-five percent of the lump sum due plaintiff shall be deducted and paid directly to his counsel.
5. Defendant shall pay the costs.
This the ___ day of August 2001.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER
LKM/mhb